UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| MICHAEL PRATT | * | CIVIL ACTION NO.  15-0129<br>SEC. P. |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| WARDEN KEITH DEVILLE, ET AL. | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for summary judgment, [doc. # 50], filed by Defendants Derek Batiste (incorrectly named in the complaint as "Lt. Babtist"), Warden Keith Deville and Damon Williams. For reasons set forth below, it is recommended that the Motion be **GRANTED**.

### Background

*Pro se* plaintiff Michael Pratt filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on January 23, 2015. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections. [doc. # 1]. He was incarcerated at the Madison Parish Correctional Center (MCC)[1] and complains of conditions of his confinement at that facility. *Id.* He sued MCC's Warden Keith Deville, Derek Batiste, the "medical department," the "security department" and various unnamed members of the medical and corrections staffs. [doc. # 5].

In Plaintiff's original complaint, he alleged that he was (1) denied access to books, unless they were religious in nature; (2) exposed to second hand tobacco smoke; (3) provided

---

[1] On October 15, 2015, Plaintiff notified the court that he is currently incarcerated at the Elayn Hunt Correctional Center. [doc. # 30].

inadequate clothing; (4) provided food that was cold and contaminated by insects; (5) denied needed medication previously prescribed for physical pain and mental health reasons; (6) and exposed to inmate violence and was the victim of excessive force by corrections officers on January 8, 2015 riot. *Id.* In response to an April 16, 2015, court order [doc. # 10], Pratt amended his complaint on April 22, 2015, to add defendants LaSalle Management Corp, Pamela Hearn, Elijah Bouthe and Damon Williams. [doc. # 12].[2] He prays for an injunction and compensatory damages. *Id.* at 3.

On December 29, 2016, defendants Derek Batiste, Warden Keith Deville and Damon Williams filed the instant motion for summary judgment seeking dismissal of plaintiff's complaint. [doc. # 50-1]. In their memorandum in support of their motion for summary judgment, defendants raise the following grounds for relief: plaintiff failed to exhaust available administrative remedies; plaintiff did not suffer any physical injury barring his claims seeking compensatory damages; plaintiff's claims seeking declaratory and injunctive relief are moot since he has been transferred to another correctional facility; and defendants are entitled to qualified immunity. *Id.* On January 11, 2015, Pratt filed his response to the motion. [doc. # 53]. The matter is now before the court.

**Standard of Review**

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would

---

[2] On December 8, 2015, the court issued a report and recommendation dismissing Pratt's claims against Dr. Pamela Hearn and Elijah Bouthe. [doc. # 42]. Additionally, Plaintiff has requested to withdraw his claims against Damon Williams. [doc. # 53, p. 1].

affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*quoting Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "The court *need* consider only the cited materials, but it *may* consider other materials in the record." FED R. CIV. P. 56(c)(3) (emphasis added). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477

U.S. at 322–23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

## Analysis

I.  **Exhaustion of Administrative Remedies**[3]

A.  Law

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, and is required even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua*, 342 Fed. Appx. 933, 934 (5th Cir. Aug. 20, 2009) (unpubl.) (*citing*

---

[3] The court will address the exhaustion issue first. *Dillon v. Rogers*, 596 F.3d 260, 270–273 (5th Cir. 2010) (typically, courts should resolve exhaustion issues before reaching the merits of the case).

*Woodford*, 548 U.S. at 85). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Id.*

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 524 (citation omitted). An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton*, 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted). A claim for deliberate indifference to an inmate's serious medical needs is also subject to exhaustion. *Harris v. Hegmann*, 198 F.3d 153, 158 (5th Cir. 1999). Exhaustion also applies to claims brought against defendants in their official and/or individual capacities. *See e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. Appx. 564 (5th Cir. Sept. 29, 2003) (unpubl.).

The Fifth Circuit has consistently held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance. *Aguirre v. Dyer*, 233 Fed. Appx. 365 (5th Cir. May 24, 2007) (unpubl.) (citation omitted); *Simkins v. Bridges*, 350 Fed. Appx. 952, 953–954, (5th Cir. Oct. 28, 2009) (unpubl.) (citation omitted); *Plaisance v. Cain*, 374 Fed. Appx. 560, 561, (April 15, 2010) (unpubl.) (citation omitted). Nonetheless, inmates should have "avenues for discovering the procedural rules governing their grievances." *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) (citations omitted). When an inmate has no means of verifying the administrative grievance process, then misleading information by prison officials may make remedies unavailable. *Id.* "If impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other

problems at the new facility." *Dillon*, 596 F.3d at 267–268 (*citing Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir. 2008)). Stated another way, the grievance filing period is tolled only so long as the inmate is actually impeded from invoking and exhausting the process.

Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies. *Dillon*, 596 F.3d at 266. If the court considers evidence beyond the pleadings to resolve the exhaustion issue, then the nonmoving party is entitled to the protections of Rule 56. *Id.*

      B.    <u>The MCC had an Available Administrative Remedy Procedure</u>

The uncontroverted evidence establishes that the MCC had a two step Administrative Remedy Procedure ("ARP") in effect during the relevant period. [doc. # 50-6, p. 1-2; # 50-7, p. 17-18]. The ARP is set forth in MCC's Offender Handbook, which was available to Pratt, and all inmates, upon request. *Id.* The MCC APR consisted of two steps and inmates were notified that compliance with each step was required and failure to do so might adversely impact any future lawsuit. *Id.*

Under MCC's ARP, the first step requires an offender to submit a written complaint in the facility where the incident occurred. *Id.* The complaint is reviewed by a corrections employee within 15 days. *Id.* After review, the corrections employee gives a signed and dated response back to the inmate. *Id.* If an offender is dissatisfied with the step one response, he may proceed to step two and forward the complaint to Warden Keith Deville. *Id.* Thereafter, a response will be given within 25 days and if the offender is still dissatisfied with the response, or did not receive a response, he could file a lawsuit in the local district court. *Id.* At this point, the offender would have exhausted all available administrative remedies available to him at MCC. *Id.*

6

C.     Defendants Did Not Establish That Plaintiff Failed to Complete the Grievance Process

In support of their motion for summary judgment, defendants stated that "although Pratt claims he filled written grievances, Pratt never filed a second-step grievance during his stay at MCC." [docs. # 50-1, p. 11; # 50-6, p. 2]. In response to defendants' motion, Plaintiff admits that he has never filed an ARP grievance and did not comply with the second step in the procedure. [doc. # 53, p. 1]. However, Plaintiff goes on to state that he did file a written ARP grievance to Capt. Hughes and to the Warden. *Id.* In Plaintiff's deposition, he states that he handed written complaints for all of his claims to Capt. Hughes and the correctional officers who volunteered to give the complaints to the warden. [doc. # 50-5, p. 4]. Although, Pratt admits the written grievances were not in "ARP" form.[4] *Id.* Plaintiff further states that he had also filed a grievance concerning the January 8, 2015 riot to Keith Deville in "ARP form." *Id.* at 3-4. Because the grievance procedure in MCC's offender handbook does not make a distinction between written complaints and written complaints in ARP form, the written complaints given to the guards should have satisfied the first step of the ARP. [doc. # 50-7, p. 17]. Plaintiff states that he never received a response after he submitted his written complaints. [doc. # 50-5, p. 5].

In short, plaintiff has adduced evidence that he completed and submitted a grievance regarding the events at issue. While plaintiff did not state that he appealed his grievance to the warden (step two), he has adduced evidence that a guard led plaintiff to believe that he had

---

[4] Plaintiff makes a distinction between complaints and complaints in "ARP" form, however the grievance procedure in MCC's offender handbook does not make such a distinction. [docs. # 50-5, p. 4; 50-7, p. 17].

7

submitted his grievance and completed step one.[5]

In *Wilson v. Epps*, 776 F.3d 296 (5th Cir. 2015), the plaintiff argued that the prison's failure to respond to his grievance relieved him from additional steps in the process. *Id.* at 301. The court explained that "[t]his argument deserves close[ ] scrutiny, because, under some circumstances, a prison's failure to respond to a prisoner's grievance can result in the prisoner's administrative remedies being deemed exhausted." *Id.* The relevant circumstances are dictated by the requirements of the prison's grievance procedures. *Id.* The grievance procedures in *Wilson* stated that if a prisoner does not receive a response to his grievance, the prisoner is "entitled"—and therefore, to exhaust, must—"move on to the next step in the process." *Id.* Although, in *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998), *overruled on other grounds as explained in Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012), the court held that when a prison's procedures prescribe deadlines by which the authorities must respond to grievances and do not set out any additional steps that prisoners must take upon that time elapsing, then prisoners in such circumstances have exhausted the available procedures. *Id.* at 295.

Here, MCC's ARP procedures state in step one that the complaint will be answered and "returned to the offender within 15 days." [doc. # 50-7, p. 18]. The procedures list no other required additional steps on behalf of the prisoner upon that time elapsing. *Id.* Plaintiff has provided testimony that the prison failed to respond to his prisoner grievance, and thus the

---

[5] Grievance procedures are unavailable to an inmate if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process. *E.g., Dillon*, 596 F.3d at 268 ("[P]rison officials' statements concerning administrative remedies can render such remedies unavailable."); *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011) ("An administrative remedy is not 'available,' and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it.").

administrative remedies could be deemed exhausted. In sum, defendants have not established beyond peradventure all of the essential elements of their exhaustion defense.[6]

**II.    Claims for Conditions of Confinement**

    A.    <u>Compensatory Damages</u>

The Prison Litigation Reform Act states in pertinent part that "[n]o [f]ederal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C.A. § 1997e(e). The Fifth Circuit has equated § 1997e(e)'s "physical injury" requirement with the standard used under the Eighth Amendment; that is, an injury that is more than *de minimis*, but not necessarily significant. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

In the case *sub judice*, Pratt has asserted six claims against the moving defendants: (1) denied access to books, unless they are religious in nature; (2) exposed to second hand tobacco smoke; (3) provided inadequate clothing; (4) provided food that was cold and contaminated by insects; (5) denied needed medication previously prescribed for physical pain and mental health reasons; (6) and exposed to inmate violence and was the victim of excessive force by corrections officers during the January 8, 2015 riot. [doc. # 5]. Pratt has asserted no physical injury stemming from his claims on the conditions of his confinement: denial of access to books, denial of medication, exposure to second hand smoke,[7] inadequate clothing and contaminated food. [doc. #

---

[6] Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies. *Dillon*, 596 at 266 (citation omitted).

[7] *See Harris v. Ashby*, 45 Fed. Appx. 325, (5th Cir. 2002) (finding that the plaintiff's "merely conclusory allegations that he was harmed by exposure to environmental tobacco smoke are insufficient to allege a constitutional violation"); *Field v. Corr. Corp. of Am. Inc.*, 364

5]. Pratt has only asserted a physical injury from his exposure to inmate violence and excessive force by corrections officers. [doc. # 50-5, p. 14].

The Fifth Circuit has recognized that a prisoner can in some circumstances, absent a showing of physical injury, pursue punitive damages based upon a violation of his constitutional rights. *See Hutchins v. McDaniels*, 512 F.3d 193, 197–98 (5th Cir.2007) (per curiam). In *Smith v. Wade*, the Supreme Court held that punitive damages are available when the official's "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." 461 U.S. 30, 56 (1983). Punitive damages are never awarded as a right, and here plaintiff has failed to provide any evidence to show that defendants in this case acted maliciously, wantonly, or oppressively, or with reckless or callous disregard for his rights. Defendants' motion for summary judgment should be granted as to plaintiff's claim for punitive damages as well. Thus, with the exception of Pratt's claim related to the prison riot on January 8, 2015, his claims seeking compensatory damages are subject to dismissal.

B. <u>Injunctive Relief</u>

Pratt's claims seeking injunctive relief of his transfer from MCC to another facility are denied as moot. As noted, plaintiff is no longer incarcerated at the offending institution and has

---

F. App'x 927, 930 (5th Cir. 2010) (plaintiff did not allege a physical injury and therefore was unable to recover damages from ETS exposure); *Jones v. Epps*, 2011 WL 1103733, (S.D. Miss. March 23, 2011) (granting summary judgment to the defendants in connection with an inmate's ETS claim where the inmate alleged only that he "had on occasion experienced choking, headaches, and an increase in blood pressure as a result of the second-hand smoke exposure"); *Noel v. Wilkinson*, 2008 WL 1859965, *2 (W.D. La. April 3, 2008) (rejecting an inmate's claim for compensatory damages resulting from exposure to ETS where the inmate alleged only that he had made "numerous sick calls" but failed to provide any factual detail regarding his alleged injuries).

been transferred to the Elayn Hunt Correctional Center. [doc. # 30; # 50-5, p. 3]. Thus, his transfer renders his prayer for prospective declaratory and injunctive relief moot. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (transfer from unit rendered prisoner's claims for declaratory and injunctive relief moot); *see also Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir.1991) (same). The possibility that plaintiff may be transferred back to the offending institution "is too speculative to warrant relief." *Herman*, 238 F.3d at 665.

### III. Claims Related to January 8, 2015 Riot

The remaining claims Pratt asserts against moving defendants stem from the prison riot that occurred on January 8, 2015. [doc. # 5]. Pratt claims that he was exposed to inmate violence and excessive force by correctional officers during the January 8, 2015 riot. *Id.*

#### A. Exposure to Inmate Violence

It is clear that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including . . . protection from harm, during their confinement." *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). Specifically, prison officials "have a duty . . . to protect prisoners from violence at the hands of other inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, "[p]rison officials are not . . . expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). The United States Fifth Circuit Court of Appeals has explained:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference.

*Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted). Further, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question, not with hindsight's perfect vision." *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998).

In the instant case, there is no allegation that there was an obvious, substantial risk to inmate safety of which the defendants were aware and to which they were deliberately indifferent. Plaintiff does not allege that even he, much less the defendants, had advance warning of the January 8th riot. The defendants simply cannot be said to have been deliberately indifferent in failing to protect against a potential harm of which they were unaware. *Farmer*, 511 U.S. at 844 (1994); *Bland v. Terrebonne Parish Criminal Justice Complex*, 2009 WL 3486449, at *6 (E.D. La. Oct. 23, 2009).

Moreover, while prison officials must make reasonable efforts to provide a safe environment, they cannot ensure that all inmates will at all times be absolutely safe from random, unanticipated attacks. To require such "absolute safety" would ask the impossible of prison administrators:

> [I]t is doubtful that inmate against inmate violence can ever be prevented within a prison setting no matter how carefully a prison might be operated. Courts must comprehend the magnitude of the prison administrators' problem and recognize the distinctly unique situation caused by confining human beings in a tension-filled atmosphere. Inmate assaults upon inmates are not unusual in the best run prisons.

*Campbell v. Anderson*, 335 F.Supp. 483, 486 (D.Del.1971); *see also Farmer*, 511 U.S. at 858–89 (Thomas, J., concurring) (noting that "[p]risons are necessarily-dangerous places" which "house

society's most antisocial and violent people in close proximity with one another" and that "some level of brutality . . . among prisoners is inevitable no matter what the guards do unless all prisoners are locked in their cells 24 hours a day and sedated") (quotation marks omitted).

In light of the foregoing, the undersigned finds that there is no basis for holding that the defendants violated Pratt's rights by failing to prevent his exposure to inmate violence during the January 8, 2015, riots.

### B. Excessive Force

Defendants seeks summary judgment concerning Plaintiff's final remaining claim for excessive force. Plaintiff, in his deposition testimony, testified that during the January 8th riot he was sprayed in the face with mace and had his shoulder stepped on. [doc. # 50-5, p. 7]. Afterwards, he was taken out to the prison yard and forced to "kneel down for approximately 30 to 45 minutes." *Id.* Plaintiff admits to having a previous shoulder injury, but contends that the pain in his shoulder is more pronounced since the riot. *Id.* at 14-15. Defendants allege that Pratt did not comply with corrections officers command to lie face down on the dorm floor with his hands behind his back when they entered the dorm area to suppress the riot. [doc. # 50-3, p. 24]. Defendants contend that as a result of Pratt's failure to comply, the corrections officers took justified and reasonable actions in light of the threat to officer safety. *Id.*

When a prison official is accused of using excessive physical force in contravention of the Eighth Amendment's Cruel and Unusual Punishment Clause, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (*citing Whitley v. Albers*, 475 U.S. 312 (1986)); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). However,

not every malevolent touch by a prison guard gives rise to a federal cause of action. *Id.* (citation omitted). The Eighth Amendment does not protect against "*de minimis* " use of physical force, so long as the use of force is not of a sort "repugnant to the conscience of mankind." *Id.* Similarly, a violation of the Eight Amendment requires that the injury incurred be more than *de minimis*. *Jackson v. Kelly*, 512 F.3d App'x 386, 388 (5th Cir. 2013). Courts consider the following factors in making a determination: "(1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir.1999) (*citing Hudson*, 962 F.2d at 523).

In situations such as this, "[prison officials] are entitled to wide-ranging deference." *See Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998) (finding that the use of mace to quell a disturbance caused by inmates on a bus did not constitute excessive force). "The amount of force that is constitutionally permissible . . . must be judged by the context in which that force is deployed." *Id.* (*quoting Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)). The use of force does not constitute cruel and unusual punishment when reasonably necessary to subdue a recalcitrant prisoner. *Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir.), *cert. denied*, 423 U.S. 946 (1975); *see Williams v. Hoyt*, 556 F.2d 1336, 1339–40 (5th Cir.1977), *cert. denied*, 435 U.S. 946 (1978) (affirming jury verdict for the defendants where evidence was sufficient to show that mace was used only for the control of unruly prisoners and was, therefore, not excessive). Under Plaintiff's own description of the facts, the force was applied only after he refused to comply with a correction officer's command during a riot. *See Whitley v. Albers*, 475 U.S. 312, 324–25

(1986) (holding that shooting prisoner in the leg, without prior verbal warning while quelling a prison riot, did not constitute excessive force under the circumstances).

Upon review of the summary judgment evidence, it appears that the force used against Plaintiff was not applied in an effort to cause harm. There does not appear to have been any malicious motive to cause Pratt harm and the injuries he suffered do not appear to have been more than an aggravation of a previous injury. In his own deposition, Plaintiff states that the corrections officers who responded had no knowledge of his previous back and shoulder injuries. [doc. # 50-5, p. 6-7]. In the context of a prison riot and Pratt's failure to comply with the commands of correctional officers, the use of mace and force against Pratt was reasonable under the circumstances.

For the foregoing reasons, the undersigned finds that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law on this claim as well. FED. R. CIV. P. 56.

## Conclusion

For the above-assigned reasons,

**IT IS RECOMMENDED** that the motion for summary judgment [doc. # 50] filed by defendants Derek Batiste, Warden Keith Deville and Damon Williams be **GRANTED**, and that plaintiff's claims be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any

objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 23rd day of February, 2016.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE